**JOHN L. BURRIS, Esq. SBN 69888**
**ADANTÉ D. POINTER Esq. SBN 236229**
**MELISSA C. NOLD, Esq. SBN 301378**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
john.burris@johnburrislaw.com
adante.pointer@johnburrislaw.com
melissa.nold@johnburrislaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO COURTHOUSE

| | |
|---|---|
| KORI MCCOY, individually and as Co-Successor-in-Interest to Decedent WILLIE MCCOY; MARC MCCOY, individually and as Co-Successor-in-Interest to Decedent WILLIE MCCOY; LOUIS MCCOY, individually and as Co-Successor-in-Interest to Decedent WILLIE MCCOY; SHAWNMELL MITCHELL, individually and as Co-Successor-in-Interest to Decedent WILLIE MCCOY; and INSERT, individually and as Co-Successor-in-Interest to Decedent WILLIE MCCOY,<br><br>        Plaintiffs,<br>v.<br><br>CITY OF VALLEJO, et al.,<br><br>        Defendants. | CASE NO.:  2:19-cv-001191 JAM-CKD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>Honorable John A. Mendez<br><br>Date:     January 14, 2020<br>Time:    1:30 p.m.<br>Ctrm:    6, 14th Floor |

Plaintiffs submit the following Opposition to Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

# TABLE OF CONTENTS

Table of Authorities .......................................................................................... 3

Introduction ...................................................................................................... 4

Statement of Facts ........................................................................................... 5

Argument........................................................................................................... 7

   I. Legal Standard on Dismissal under FRCP 12(b)(6) ................................................ 7

      A.   Plaintiffs Plead Facts Sufficient to Support Their *Monell* Claim ............................ 9

         i. Plaintiffs are not Relying on Unsubstantiated Allegations ......................... 11

         ii. Prior Incidents are Similar to Subject Incident ...................................... 12

     B. Plaintiffs Acknowledge the Insufficiency of their Pleading Regarding the Chief of Police 13

     C. Court Should Permit Plaintiffs to Cure Any Deficiencies in Their Complaint....... 13

     D. Conclusion........................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………   8

*Breen v City of Concord,* 3:19-cv-05622, 6:3-6, Dkt #19……………………………   13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………   8

*Christie v. Lopa,* 176 F.3d 1231, 1238 (9th Cir.1999)……………………………...…   10

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)…………………………   10

*City of Canton v. Harris*, 489 U.S. 378 (1989) …………………………………   9

*Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015)   9

*Estate of Villarreal ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063 (2013) ……...……………   9

*Galbraith v Cnty. Of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)……………………   10

*Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (per curiam)…………………………   10

*Gilliam v. City of Vallejo*, No. 214-cv-2217, 2016 WL 4059184 (E.D. Cal. May 27, 2016)…… 11, 12

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)……………………………… 8

*Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003)………………………………… 8

*Jackson v. Carey*, 353 F .3d 750, 755 (9th Cir. 2003)…………………………………………   8

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ………………………………………   9

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)…………………………………………   14

*Monell v. Department of Social Services*, 436 U.S. 658 (1978). …………………………………   9

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)………………………………… 8

*Phillips v. Cty. of Fresno*, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3, 2013)…. 9

**Statutes**

42 U.S.C. 1983 …………………………………………………………………………… 9, 10

Federal Rule of Civil Procedure 12(b)(6) ……………………………………………………  7, 8

Federal Rule of Civil Procedure 15(a) …………………………………………….....   13

## INTRODUCTION

On February 9, 2019, Defendant City of Vallejo Police Officers Mark Thompson, Bryan Glick, Anthony Cano, Ryan McMahon, Jordon Patzer, and Colin Eaton shot and killed Willie McCoy after rousing him from his sleep as he sat unconscious in the driver's seat of his car in a fast food drive-through line. The officers had been summoned to the scene to conduct a welfare check on the sleeping young man but instead wound up shooting him to death in a barrage of bullets. The Officers' conduct violated long standing California Police Officers Standards and Training (POST) along with Vallejo Police Department policy. Despite the Officers running afoul of their training and the law, none of the Defendant Officers were retrained or disciplined as a result of this incident.

Plaintiffs bring this action against Defendants alleging violations of the Fourth and Fourteenth Amendments and attendant state law claims arising out of Decedent's wrongful death. Defendants incredulously move to dismiss Plaintiffs' Complaint based upon inapplicable case law and their mistaken belief that Plaintiffs randomly listed twenty-one (21) prior incidents of litigation against the City of Vallejo to demonstrate a pattern of permitting excessive force. However, as Plaintiffs' Complaint clearly states, the prior cases are listed for the purpose of demonstrating Vallejo Police Department, and *inter alia* the City of Vallejo's, awareness of this pattern of its Officers using excessive force and its ongoing failure to supervise, discipline and/or retrain the officers who engage in such conduct, as evidence of the City's deliberate indifference to its Officers' constitutionally violative conduct which is tantamount to a custom, policy or practice that is encouraged and ratified by the City.

Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint is based on the arguments made below, on the Court's file in this matter, and on such oral and/or documentary evidence presented at the hearing of this motion.

4

## **STATEMENT OF FACTS**

On Febuary 9, 2019, at approximately 10:30 p.m., a yet-to-be-identified person found Decedent Willie McCoy slumped over the steering wheel of his car. Mr. McCoy's car was located in the Taco Bell drive through, located at 974 Admiral Callaghan Lane in Vallejo, California. Emergency services were called and Vallejo Police Department Officers were dispatched to the scene for a simple welfare check. City of Vallejo Police Department Officers Ryan McMahon, Anthony Romero-Cano, Mark Thompson, Jordan Patzer, Bryan Glick, Collin Eaton, and other yet-to-be-identified Vallejo Police Officers arrived, including one or more officers who were not wearing uniforms identifing them as police officers.

When Officers arrived on the scene, they found Mr. McCoy's car located on private property and they did not suspect Mr. McCoy of having commited any crime or infraction. When Officers approached Mr. McCoy's car, they found him unconscious and allegedly with a handgun on his lap without the magazine in it. Mr. McCoy's doors were allegedly locked; however, the passenger side window was missing and had only a thin piece of plastic covering it. Nothing but the thin piece of plastic prevented the Officers from opening and/or unlocking the car door to remove the unconscious man and/or the gun.

Inexplicably, the six Defendants surrounded the **front** of the car despite their claim that Mr. McCoy's car was still in drive. The Officers stood around the car instead of following their training and common sense, which would have directed them to take a position of cover and safety behind their numerous patrol vehicles.

Officer Thompson commanded his fellow officers to shoot Mr. McCoy if he moved and not to give Mr. McCoy a chance. The Officers stood outside of the car and never attempted to rouse Mr.

5

McCoy from his unconsious state, nor did they develop a plan to safely remove Mr. McCoy, or the firearm that they feigned concern about, from his car.

As the Officers stood watch, Mr. McCoy who was still cleary unconcious, began to move. He scratched his shoulder and slowly slumped forward prompting the Officers to scream at Mr. McCoy to 'show his hands' as they nearly simultaensouly fired a barrage of bullets into the sleeping man's body, striking him dozens of times. In total, the Officers fired fifty-five (55) rounds without having ever identified themselves as police officers or giving Mr. McCoy the opportunity to awake and comply with their commands. Many of the named Defendants were standing in positions that would prevent them from personally perceiving any alleged threat or danger posed by Mr. McCoy.

As stated in the Complaint, the entire opertion was bungled from start to finish as the Officers failed to: 1) develop a plan of action to ensure the safety of all persons involved; 2) make any attempt to unlock the car from the missing passenger side window and remove Mr. McCoy, or the gun, from the car; 3) retreat to a position of safety; 4) summon the SWAT team or critical incident team; 5) summon supervisory staff to the scene in order to devise, manage and/or direct a sound plan of action; 6) identify themselves as police officers; 7) demonstrate proper gun handling procedures; and/or 8) reassess any perceived threat between each application of deadly force. (Plaintiffs' Complaint Dkt #1 ¶37)  None of the Defendant Officers were disciplined or retrained as a result of their actions during this incident. (Plaintiffs' Complaint Dkt #1 ¶38)  Moreover, all six officers returned to duty, despite one of them having been involved in the execution of an unarmed man just a year earlier.

The Officers' conduct during this incident was further ratified by Defendant Chief of Police Bidou. Chief Bidou signed off on the McCoy shooting without proscribing any retraining or

6

discipline, in an incident which killed a sleeping man as the direct result of the violation of the long-standing training intended to prevent such tragedies as well as ensure officer safety.

In Plaintiffs' Complaint, they allege that the subject incident continues the Vallejo Police Department's long-standing pattern and practice of ratifying its Officers' misconduct. (Plaintiffs' Complaint Dkt #1 ¶3) Plaintiff's Complaint further states Defendant City is aware of its Officers' constitutionally violative conduct yet it refuses to adequately train, supervise, discipline or retrain its officers who engage in unconstitutional policing. (Plaintiffs' Complaint Dkt #1 ¶3)  The City's steadfast denial and/or refusal to properly train, supervise and/or discipline its Officers for using excessive force demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference, the use of excessive force and the fabrication of official reports to cover up the Defendant Officers's misconduct. (Plaintiffs' Complaint Dkt #1 ¶38)

To that end, Plaintiffs listed twenty-one (21) prior incidents where violations of Vallejo Police Department policy and long-standing P.O.S.T. training did not result in any manner of discipline or retraining which is similar, if not identical, to the allegations contained in the Complaint at bar, namely that none of the Officers that shot and killed Mr. McCoy were disciplined and/or retrained. (Plaintiffs' Complaint Dkt #1 ¶¶38, 39, 41(a)–(w), 52-63). The vast majority of the listed incidents have, or are expected to result in, significant monetary settlements or verdicts to compensate for the officers' wrongdoing.

## ARGUMENT

### I. LEGAL STANDARD ON DISMISSAL UNDER F.R.C.P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(6) tests the legal

7

sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc*., 349 F.3d 1191, 1199-200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." Id. (internal quotations omitted).

A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of the complaint. There is a strong presumption against dismissing an action for failure to state a claim. See *Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997). The Rule 12(b)(6) issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Jackson v. Carey*, 353 F .3d 750, 755 (9th Cir. 2003). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v*

8

*Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Leiche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

A.  **PLAINTIFFS PLEAD FACTS SUFFICIENT TO SUPPORT THEIR *MONELL* CLAIM**

A municipality is only liable for the acts of its employees through section 1983 where the plaintiff can show that a policy, custom, or practice led to the violation at issue. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The failure to train or supervise may give rise to a "policy or custom" sufficient to impose liability on defendants. *City of Canton*, 489 U.S. at 389- 90. A municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton*, 489 U.S. at 388; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). See e.g., *Estate of Villarreal ex rel. Villarreal v. Cooper*, 929F.Supp.2d 1063, 1077 (2013).

A relaxed pleading standard may apply in limited circumstances. Allegations based on "information and belief" may be sufficient to establish a "causal connection between the existing or non-existing policies, procedures and practices and the harms [Plaintiffs] experienced" when "the facts that might demonstrate the causal connection—such as...corrective actions taken or not taken—are not available to the pleading party [before] discovery." *Phillips v. Cty. of Fresno*, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3, 2013) (internal citations and quotation marks omitted). This is particularly true when a plaintiff raises failure to discipline or failure to train claims. See *Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015) (allowing plaintiffs' failure to supervise, investigate, or discipline claim to survive defendants' motion to dismiss); *Phillips*, 2013 WL 6243278 at *10 ("find[ing] that dismissal of plaintiffs' claims for entity/supervisor liability is inappropriate at this stage of the proceeding"). A plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional

violations for which the errant municipal officials were not discharged or reprimanded," *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (per curiam).

Isolated constitutional violations may also give rise to municipal liability where an agent of the municipal corporation possesses final policymaking authority and "ratifies" a subordinate's actions. *Christie v. Lopa*, 176 F.3d 1231, 1238 (9th Cir.1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id.* at 1239.

"In this circuit, a claim of municipality liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice." *Galbraith v Cnty. Of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002).*

Defendants claim that Plaintiffs have not presented facts sufficient to support their *Monell* claim and that Plaintiffs cannot plead prior incidents to allege a pattern and practice sufficient to support a *Monell* claim. Defendants are patently incorrect. Here, Plaintiffs listed twenty-one (21) instances of police misconduct which resulted in claims, lawsuits, jury verdicts and/or settlements arising out of the alleged use of excessive and/or unlawful deadly force. Plaintiffs further alleged the City failed to discipline or retrain any of the involved offending officers: all facts which are similar to the case at bar. Plaintiffs based the allegations contained in the Complaint on personal knowledge, information, and belief, since the vast majority of cases listed in Plaintiffs' Complaint were litigated by the Law Offices of John L. Burris and counsel maintains firsthand knowledge of the lack of discipline or retraining involved in those incidents, which also occurred in the instant case.

Moreover, Plaintiffs' Complaint specifically describes another fatal use of force case wherein Defendant McMahon shot and killed Ronell Foster, an unarmed bicyclist, just short of a year before

Defendant McMahon shot and killed Mr. McCoy. Plaintiffs in that case alleged, like here, that Defendant McMahon engaged in an unlawful use of deadly force was not disciplined or retrained and that the City tried to cover it up and/or chose to ratify the outrageous killing. The Foster case, like the McCoy case, is in the midst of being litigated in federal court. (Plaintiffs' Complaint Dkt #1 ¶ 41(o)).

Plaintiffs' Complaint also describes a July 2017 incident wherein Defendant Mark Thompson viciously beat a man causing him to suffer a broken nose and a black eye which necessitated stitches. (Plaintiffs' Complaint Dkt #1 ¶ 40(n)).  However, Plaintiffs did not list only cases wherein officers who are named Defendants in the instant litigation have been named Defendants in other litigation. Instead, Plaintiffs painstakingly listed a litany of other instances wherein citizens have filed government tort claims and/or lawsuits identifying other Vallejo Police Officers who, similar to the Defendants at bar, have used excessive and/or deadly force under dubious circumstances and those Officers, like the ones who are named as Defendants here, were not disciplined or retrained. For example, Officer Sean Kenney shot and killed 3 different unarmed men but was never disciplined. Incredibly, after the third fatal shooting, he was allowed to voluntarily quit his job and was later rehired as a homicide detective. (Plaintiffs' Complaint Dkt #1 ¶ 40(a-c)).

Further, the City's failure to discipline or retrain Defendant Officers for failure to follow their own explicit departmental policy, as evidenced by multiple prior incidents, is sufficient to support Plaintiffs' *Monell* claim based upon a Fourth Amendment violation. In addition, the City's failure to discipline or retrain serves as ratification of Defendants' policy violations and unlawful conduct. As such, Defendants' Motion to Dismiss must be denied.

### i.      PLAINTIFFS ARE NOT RELYING ON UNSUBSTATIATED ALLEGATIONS

Contrary to Defendants' understanding, the case law they cite from *Gilliam v. City of Vallejo*, No. 214CV2217KJMKJNPS, 2016 WL 4059184 (E.D. Cal. May 27, 2016) and the other listed cases,

are neither applicable nor controlling. *Gilliam* presents a pro se plaintiff who simply listed prior litigation without offering any specific and articulated nexus to his case.

Unlike the pro se plaintiff in *Gilliam* (and other cases) wherein plaintiff listed prior litigation without providing an explanation or connection to their case, Plaintiffs here have not plead prior unsubstantiated allegations generally to prove a pattern and practice of excessive force. In fact, Plaintiffs' operative Complaint clearly explains that the twenty-one (21) incidents are provided specifically as examples wherein Vallejo Police Officers violated department policy and/or long-standing training principles, and were neither disciplined or retrained, resulting in an on-going public safety issue. (See Dkt. 1, 12-23). Plaintiffs' counsel litigated the majority of the listed cases and possesses first-hand knowledge regarding the lack of discipline and/or retraining as evidence of an on-going lack of supervision which is the very essence of Plaintiffs' *Monell* claim.

While Plaintiffs included just a sampling of cases they are personally familiar with, it is anticipated that discovery will uncover even more undisciplined misconduct and supervisory failure. Moreover, the majority of the twenty-one (21) cases listed resulted in, or is expected to result in, significant financial compensation which belies Defendants' contention that the prior incidents are unsubstantiated.

### ii.   PRIOR INCIDENTS ARE SIMILAR TO SUBJECT INCIDENT

As described above, the twenty-one (21) incidents listed in Plaintiffs' Complaint are not dissimilar to the subject incident. In fact, all of the incidents described in Plaintiffs' Operative Complaint are incidents where policy and training was not followed by Vallejo Police Officers and no discipline or retraining was ordered by the command staff, exactly like the subject incident. All of the twenty-one (21) instances were also use of force incidents. Plaintiffs' counsel has litigated the

vast majority of these cases and has knowledge of the lack of discipline and/or retraining in response to policy and training violations and has alleged knowledge of that inaction in the Complaint.

Plaintiffs implore this Court to use a similar analysis recently utilized by Magistrate Judge Sally Kim.  In *Breen v. City of Concord, et al.*, she reasoned that "highly detailed allegations from factually pertinent cases presented by Plaintiff in support of his *Monell* claim are more than sufficient to survive Defendants' motion to dismiss." *USNDC Case No. 3:19-cv-05622-SK Dkt #19*

## B.  PLAINTIFFS ACKNOWLEDGE THE INSUFFICIENCY OF THEIR PLEADING REGARDING THE CHIEF OF POLICE

Defendants seek to dismiss Defendants Andrew Bidou and Greg Nyhoff from the litigation because they have both been listed in their official capacity only, which is duplicative of suing the City itself.

Here, after meeting and conferring with Defendants, Plaintiffs agree to dismiss Defendant City Manager Greg Nyhoff based on Defendants' representation that Defendant Chief Bidou was the final decision-maker for the Vallejo Police Department at the time of the incident and not Defendant Greg Nyhoff, despite Nyhoff's public statements to the contrary that "the buck stops with him."

Nevertheless, Plaintiffs acknowledge that they improperly listed the capacity of Defendant Bidou. Plaintiffs inadvertently failed to sue him in his individual capacity. Since Defendants claim no prejudice from this error, Plaintiffs request leave to amend their Complaint to sue Chief Bidou in his individual capacity as the final decision-maker related to the subject incident.

## C.  COURT SHOULD PERMIT PLAINTIFFS TO CURE ANY DEFICIENCIES IN THEIR COMPLAINT

Should the Court determine that the Complaint is defective, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted). Given the wealth of information pled concerning the City's pattern and practice of permitting its Officers to remain inadequately trained and supervised so that its Officers engage in the unconstitutional use of unlawful deadly force, Plaintiffs should be granted leave to cure any defects concerning their *Monell* cause of action.

**D. CONCLUSION**

Plaintiffs pled several paragraphs of specific, detailed factual allegations that the City engages in a custom, policy, or practice of excessive force, and that it refuses to adequately train its officers in how to properly use force and/or discipline its officers who engage in constitutionally violative conduct. Moreover, Plaintiffs made *specific* allegations of wrongdoing against two of the Defendants in this case. Plaintiffs' Complaint also cites multiple court cases involving allegations of the unlawful use of deadly force similar to those presented here. For the reasons illustrated above, Plaintiffs pray that the Court deny Defendants' Motion to Dismiss Plaintiffs' *Monell* claim and respectfully request leave to amend their Complaint to identify Chief Bidou as being sued in his individual capacity.

Respectfully submitted,

**LAW OFFFICES OF JOHN L. BURRIS**

Date: December 31, 2019          /S/ *Melissa C. Nold*

MELISSA C. NOLD
ADANTE D. POINTER
COUNSEL FOR PLAINTIFFS

14