UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORI MCCOY, individually and as Co-Successor-in-Interest to Decedent WILLIE MCCOY; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, et al.,<br><br>Defendants. | No. 2:19-cv-01191-JAM-CKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiff's Second Amended Complaint ("SAC"), ECF No. 84, alleges eight causes of action, including various allegations under 42 U.S.C. § 1983, as well as claims of negligence, battery, conspiracy, supervisory liability, and violations of California Civil Code § 52.1. Id. ¶¶ 75-113.

Defendants move to dismiss Plaintiffs' second cause of action for violation of interference with familial relations, eighth cause of action for negligent supervision, and seventh cause of action for conspiracy. See Mot. to Dismiss ("Mot."), ECF No. 94. Defendant Police Officer Ryan McMahon joins the individual, non-supervisory co-defendants in their Motion to Dismiss the second and seventh causes of action. See McMahon's

1

Joinder, ECF No. 95.

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.[1]

## I. BACKGROUND

The Court has previously described the facts of this case, thus, it will not do so again here. See Order Grant. in Part and Den. in Part Defs.' Mot. to Dismiss at 2, ECF No. 12; see also Order Den. Defs.' Mot. to Bifurcate at 2, ECF No. 61. On March 26, 2021, Plaintiffs filed their SAC. See SAC. Following the filing of Defendants' instant motion to dismiss, the parties stipulated that Marquita McCoy cannot pursue state law claims brought in her individual capacity for damages because she failed to timely file a government claim within six months of McCoy's death. See Stip. at 2, ECF No. 97 (citing Cal. Gov. Code §§ 905, 905.2, 954.4). The parties, therefore, agreed that Marquita McCoy's state law claims for wrongful death, pursuant to the Bane Act, Cal. Civ. Code § 52.1, battery, conspiracy, and supervisory liability that are found in the SAC's fourth through eighth causes of action should be dismissed with prejudice. Id.

As noted above, Defendants' motion to dismiss seeks to eliminate three of the SAC's eight causes of action. See generally Mot. First, Defendants argue that Plaintiffs' Fourteenth Amendment claim for violation of familial relations should be dismissed because siblings have no right to assert such

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for June 22, 2021.

2

a cause of action. Mot. at 13. Next, Defendants argue that Plaintiff's negligent supervision claim is not viable because no special relationship has been alleged, and, moreover, the officers are immune from the allegation. Mot. at 13-18. Finally, Defendant's contend that Plaintiff's conspiracy claim is not a stand-alone claim under state law and cannot be pled against former Chief Bidou, Sergeant Wylie, and Lieutenant Darden as the use of force occurred without their involvement. Mot. at 18-20. Defendants also argue that Plaintiffs cannot plead a federal conspiracy claim to commit excessive force. Id.

Plaintiffs oppose nearly all of Defendants' motion to dismiss. See Opp'n, ECF No. 98. Plaintiffs concede that Marquita McCoy, Kori McCoy, Shawnmell Mitchell, Marc McCoy, and Barbara Dorsey cannot assert a Fourteenth Amendment claim for familial loss against Defendants. Opp'n at 14, n.2. Defendants' filed a reply. See Reply, ECF No. 99.

## II. OPINION

### A. Judicial Notice

Defendants request judicial notice of the City of Vallejo Police Department's Computer Aided Dispatch ("CAD") Incident Report No. 1902090192, dated February 2, 2019. See Defs.' Req. for Judicial Notice ("RJN"), ECF No. 94-1. Plaintiffs do not oppose this request. The CAD Incident Report is a public record whose accuracy cannot be reasonably questioned. See Harris v. Cty. of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012); Sialoi v. City of San Diego, WL 6410987, at *1, n.2 (S.D. Cal. 2013) (the court took judicial notice of a CAD printout). The Court

grants Defendants' request for judicial notice.

B.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  A Rule 12(b)(6) motion attacks the complaint as not alleging sufficient facts to state a claim for relief.  "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal quotation marks and citation omitted).  While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

C.  Analysis

1.  Familial Relationship

Defendants argue that Plaintiff's second cause of action for violation of their right to a familiar relationship pursuant to the Fourteenth Amendment must be dismissed because Plaintiffs are McCoy's siblings. See Mot. at 13.  Plaintiffs concede this as to all of McCoy's siblings except for his brother, Louis McCoy. See Opp'n at 14-15.  McCoy and his brother Louis were orphaned in their early teens and McCoy took care of Louis,

"providing him with financial support, guidance, and companionship." Opp'n at 5. Thus, Plaintiffs contend that the Court should consider them to be more than just siblings. See Mot. at 14.

The Court declines to do so. The Ninth Circuit has clearly held that "[n]either the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children." Ward v. City of San Jose, 987 F.2d 280, 284 (9th Cir. 1991); see also Wheeler v. City of Santa Clara, 894 F.3d 1046, 1058 (9th Cir. 2018) ("Few close relationships—even between blood relatives—can serve as a basis for asserting Fourteenth Amendment loss of companionship claims."). Plaintiffs' allegation that their right to a familial relationship was violated fails as a matter of law. The Court dismisses Plaintiffs' second cause of action with prejudice.

### 2. Supervisory Liability

Plaintiffs, in their eighth cause of action, allege that Sergeant Wiley and Lieutenant Darden are liable for the excessive force used against McCoy because they failed to properly supervise the other officers. See SAC ¶¶ 111-13. The SAC fails to specify whether Plaintiffs' supervisory liability claim is brought under state or federal law, however, Plaintiffs only respond to Defendants' arguments made pursuant to federal law. See Opp'n at 6-11 ("Plaintiffs allege Section 1983 supervisory liability . . . ."). Thus, Plaintiffs' eighth cause of action arises exclusively under federal law. The Court need not address whether Plaintiffs' claim of supervisory liability

fails under California law.

Federal law does not impose liability on a supervisor for a subordinate's action by virtue of that relationship alone. See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691 (1978). A supervisor can only be held liable for the constitutional violations of his subordinates if the supervisor either had personal involvement in the constitutional deprivation or there was a sufficient causal connection between the supervisor's unlawful conduct and the constitutional violation. Edgerly v. City & Cty. of S.F., 599 F.3d 946, 961 (9th Cir. 2010). The causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Rodriguez v. Cty. of L.A., 891 F.3d 776, 798 (9th Cir. 2018) (alteration in original) (citation omitted). Thus, supervisors can be held liable for: "(1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000).

Defendants argue that Plaintiffs' allegations are insufficient to establish a failure to supervise theory of liability. See Mot. at 16–18. Defendants contend Sergeant Wylie and Lieutenant Darden had no personal involvement in the use of force as they were not on the scene and had no special

6

relationship with McCoy. Mot. at 16; see SAC ¶¶ 2, 34, 37-43 (Officers Mark Thompson, Collin Eaton, Jordan Patzer, Bryan Glick, Anthony Romero-Cano, and Ryan McMahon were on the scene and involved in the use of force). Sergeant Wylie and Lieutenant Darden arrived on the scene after McCoy was shot by the other officers. See SAC ¶¶ 38, 112. The shooting occurred at about 22:51, shots were confirmed at 22:52:38, and Sergeant Wylie and Lieutenant Darden arrived at 22:52:51 and 22:54:30, respectively. See CAD Incident Report, Ex. A to RJN, ECF No. 94-1. The Court agrees that neither was personally involved in the shooting.

However, it is not true that Plaintiffs have failed to allege sufficient facts to suggest a causal connection between Sergeant Wylie and Lieutenant Darden's alleged acts and omissions and the use of force. The officers that first arrived on the scene and stood around McCoy's car, "put over the radio that they may have a potential shooting situation." SAC ¶ 3. They "called out over dispatch" to "summon[] other officers." SAC ¶ 37. And, "[e]ven though Defendant Romero-Cano dispatched that they had a potential officer-involved shooting situation," the on-duty supervisors—Sergeant Wylie and Lieutenant Darden— "ignored the call . . . instead of supervising their subordinates during a high-risk, and ultimately deadly encounter." SAC ¶ 38. Plaintiffs allege that, without Sergeant Wylie and Lieutenant Darden's supervision, "the officers formulated no plan or strategy, and recklessly [shot and killed McCoy]." SAC ¶ 39.

These factual allegations amount to more than conclusory

7

statements. Instead, they state a plausible claim of relief. "If taken as true, as required, [Plaintiffs'] factual allegations show [Sergeant Wylie and Lieutenant Darden] knew of unconstitutional conduct by [their] subordinates and did not terminate these actions, satisfying each of the elements of a successful supervisory liability claim." Calhoon v. City of South Lake Tahoe, WL 5982087, at *8 (E.D. Cal. 2020).

Defendants cite to Edgerly, 599 F.3d at 961-62 and Wereb v. Maui Cty., 727 F.Supp.2d 898, 919-20 (D. Haw. 2010), in support of the argument that Sergeant Wylie and Lieutenant Darden cannot be held responsible for the actions of their subordinates. See Reply at 6-7. However, both are distinguishable. In Edgerly, the sergeant was not found liable because he was merely responsible for day-to-day operations at the station when he was on duty and provided only informal training to the officers. 599 F.3d at 961. The sergeant was not personally involved in the incident because he "was not aware of the arrest or search until after they were completed." Id. By contrast, the SAC alleges that Sergeant Wylie and Lieutenant Darden were aware that officers were responding to a call about McCoy; that the officers already on the scene were possibly about to use an unlawful amount of force against him; and that Sergeant Wylie and Lieutenant Darden did nothing to deescalate the situation or intervene. Wereb is distinguishable because, there, the supervisory liability claim was based on a failure to train, not a failure to supervise. 727 F.Supp.2d at 919-20.

Defendants make a final attempt to dismiss this claim by arguing that qualified immunity applies. See Mot. at 17-18.

8

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). In determining whether it applies, courts ask: (1) whether there was a deprivation of a constitutional or statutory right, and/or (2) whether that right was "clearly established" at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Pearson, 555 U.S. at 236.

It is clearly established law that supervisors may be held liable for the unconstitutional actions of their subordinates when: (1) they knew the actions were about to be taken; and (2) did not attempt to terminate these actions. See Cunningham, 229 F.3d at 1292 (in conducting its qualified immunity analysis, the Ninth Circuit treats supervisory liability for failing to supervise, or failing to intervene in unconstitutional actions, as clearly established law). Because the clearly established prong is met, there is no need to analyze whether the facts presently before the Court establish a deprivation of a constitutional right. See Pearson, 555 U.S. at 236-42 (holding that the Saucier prongs need not be analyzed in a particular order and need not both be analyzed if one is met). As a result, qualified immunity does not apply at this stage.

Defendants' motion to dismiss Plaintiffs' eighth cause of action for supervisory liability against Sergeant Wylie and Lieutenant Darden is denied.

///

### 3. Conspiracy

Plaintiffs' seventh cause of action alleges a conspiracy between Officers McMahon, Romero-Cano, Thompson, Patzer, Glick, Eaton, Sergeant Wylie, Lieutenant Darden, former Chief Bidou, and the City of Vallejo. See SAC ¶¶ 108-10. Plaintiffs concede with silence that they have not pled a valid state-law claim for conspiracy. See Opp'n at 11-14; Ardente, Inc. v. Shanley, 2010 WL 546485, at *6 (N.D. Cal. 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."); see also E.D. Cal. L.R. 230(c). Plaintiffs only allege a conspiracy claim under § 1983. See Opp'n at 11. In order to allege a conspiracy under § 1983, a plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks and citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Id. at 441.

This agreement or meeting of the minds may be inferred based on circumstantial evidence, such as the actions of the defendants. Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1301 (9th Cir. 1999). In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. See Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005). The claim requires "an actual deprivation of constitutional rights." Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006). "The defendants must have, by some concerted action, intended to accomplish some

unlawful objective for the purpose of harming another which results in damage." Mendocino Envtl. Ctr., 192 F.3d at 1301.

Plaintiffs have alleged facts supporting a § 1983 conspiracy as to most of the individual officer defendants. Officers Thompson, Eaton, Patzer, Glick, Romero-Cano, and McMahon arrived on the scene and found McCoy unconscious in his car. SAC ¶ 2. These officers stood around McCoy's vehicle and put out a dispatch over the radio saying, "they may have a potential shooting situation." SAC ¶¶ 3, 37. Officer Romero-Cano then "commanded his fellow officers to shoot [] McCoy if he moved and to not give [] McCoy a chance." Id. As McCoy began to rouse, Officers Thompson, Eaton, Patzer, Glick, and Romero-Cano opened fire on him. SAC ¶¶ 4, 41. In the midst of their fire, Officer McMahon arrived and, "without [seeing] or [] apprehend[ing] any of the circumstances," began shooting into the car. SAC ¶¶ 4, 42. None of the officers identified themselves prior to opening fire on McCoy. SAC ¶ 45. Nor did they provide warning that they would shoot. Id. And, as described above, Sergeant Wiley and Lieutenant Darden ignored the call from their subordinates that shooting may occur. SAC ¶ 38. The officers shot fifty-five times, killed McCoy, and killed a bystander. SAC ¶ 38.

The Court finds that an agreement or meeting of the minds could be inferred to support the agreement element of a conspiracy. See Steel v. City of San Diego, 726 F.Supp.2d 1172, 1179 (finding telephone conversations between a lawyer hired by the plaintiff's ex-wife, private investigators, and a San Diego police officer, in the context of a contentious divorce, and

around the time the plaintiff was allegedly unlawfully pulled over for a DUI, was sufficient to support the agreement element).  The facts above suggest the officers acted in unison and no officer or supervisor questioned the decision to unload fifty-five rounds into McCoy's car.  The Court also finds that the allegations support a potentially unlawful use of force against McCoy.  Id. (finding that, if the plaintiff was not ultimately convicted of a DUI, the allegations would support the unlawful objective element).  Thus, both elements of a civil conspiracy pursuant § 1983 are sufficiently met by the facts alleged in the SAC as to Officers McMahon, Romero-Cano, Thompson, Patzer, Glick, Eaton, Sergeant Wylie, and Lieutenant Darden.  With regard to the City of Vallejo, Defendants make no argument as to why it should be dismissed.  See Mot. at 18-20; Reply at 8-9.

As for Chief Bidou, the SAC does not allege sufficient facts to plausibly connect him to the conspiracy to use an unlawful amount of force against McCoy.  The facts alleged against Chief Bidou have to do with an attempt by Chief Bidou to dispose of evidence pertaining to the "Badge of Honor" gang.  See SAC ¶¶ 47, 57, 60, 61-63.  However, the existence of the "Badge of Honor" gang does not constitute the § 1983 conspiracy here.  The "actual deprivation of [a] constitutional right[]" was the excessive use of force that killed McCoy.  Hart, 450 F.3d at 1071.  Chief Bidou "must have, by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." Mendocino Envtl. Ctr., 192 F.3d at 1301.  Chief Bidou did not dispose of the

evidence in order to harm McCoy.  McCoy had already been harmed by that point.  The conspiracy claim against Chief Bidou must, therefore, be dismissed.

## III.   ORDER

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.  The Court:

1. GRANTS Defendants' motion to dismiss the second cause of action for violation of Plaintiffs' right to a familiar relationship pursuant to 18 U.S.C. § 1983 WITH PREJUDICE;

2. DENIES Defendants' motion to dismiss the eighth cause of action for supervisory liability pursuant to 18 U.S.C. § 1983; and

3. DENIES Defendants' motion to dismiss the seventh cause of action for conspiracy pursuant to 18 U.S.C. § 1983 as to Officers McMahon, Romero-Cano, Thompson, Patzer, Glick, Eaton, Sergeant Wylie, Lieutenant Darden, and the City of Vallejo;

3. GRANTS Defendants' motion to dismiss the seventh cause of action for conspiracy pursuant to 18 U.S.C. § 1983 as to former Chief Bidou WITH PREJUDICE.

IT IS SO ORDERED.

Dated: June 28, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE