1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LOUIS MCCOY, et al.,                    No.  2:19–cv–1191–JAM–CKD

12                      Plaintiffs,           ORDER

13           v.                               (ECF Nos. 174, 181)

14    CITY OF VALLEJO, et al.,

15                      Defendants.

16

17          Presently before the court are plaintiffs' motion to compel further deposition testimony by

18    members of the Vallejo Police Department ("VPD") and defendants' request to seal portions of

19    the briefing of this motion.  (ECF Nos. 174, 181.)  The parties filed on the docket a partly

20    redacted Joint Statement regarding the discovery disagreement, along with certain supporting

21    materials (ECF No. 180); and defendants emailed to the court (pursuant to Local Rule 141(b)) a

22    request to seal and proposed redacted versions of numerous documents and declarations related to

23    the discovery dispute—also filing on the docket a notice of this request to seal, to which they

24    attached two declarations with additional exhibits (ECF No. 181).[1]  After reviewing the Joint

25    Statement and related materials, the court determines this matter is suitable for resolution without

26

27    _____
      [1]      Because the court herein grants the request to seal, this order cites to the internal
      pagination of those referenced documents which have not yet been filed on the docket.  When
28    discussing the sealed portions of documents, the court refers only generically to their contents.

                                         1

1   oral argument, see E.D. Cal. L. R. 230(g), and therefore vacates the September 28, 2022, hearing

2   on plaintiffs' motion.  For the following reasons, the court GRANTS IN PART plaintiffs' motion

3   to compel and GRANTS defendants' request to seal.

4   **BACKGROUND**

5       This excessive force case arises from the death of Willie McCoy, a 20-year-old man who

6   in February 2019 was fatally shot by a group of VPD officers as he slept in his car.  Plaintiffs are

7   suing six VPD officers involved in the shooting, two VPD supervisors, former VPD Chief

8   Andrew Bidou, and the City of Vallejo for—as relevant to this motion—excessive force,

9   municipal liability, and supervisory liability under 42 U.S.C. § 1983.  (See ECF No. 169, Third

10  Amended Complaint ("TAC").)

11      The operative complaint includes a Monell claim for municipal liability against former

12  Chief Bidou (who retired in June 2019) and the City, alleging a pattern and practice of officers

13  using excessive force without facing disciplinary consequences.  (TAC at 25-28.)  As one of the

14  bases for the Monell claim, the complaint asserts that at the time of McCoy's death, there existed

15  within the VPD a "vigilante police gang" which rewarded officers for shooting and killing

16  citizens, commemorating each killing by bending one point on the officer's police badge for each

17  fatality—and treating them to "beer and a barbecue" for their killing.  (TAC ¶¶ 42-44.)  Part of

18  gang members' reward was also to be promoted within the VPD and protected from internal

19  affairs investigations and discipline.  (TAC ¶ 44.)  Plaintiffs allege that the defendant officers

20  treated the McCoy shooting as an opportunity to gain additional 'badge-bends' and that Chief

21  Bidou conspired with this gang to promote, maintain, and conceal the group's existence before

22  and after the shooting.  (TAC ¶¶ 52-58.)

23      The complaint attributes these allegations to the contents of a whistleblower employment

24  lawsuit filed in state court in 2020 by former VPD Captain John Whitney.  (TAC ¶ 42; see John

25  Whitney v. The City of Vallejo, et al., No. FCS055842 (Cal. Super. Ct. Solano Cty., complaint

26  filed Dec. 22, 2020).)  According to the TAC, Chief Bidou had Captain Whitney fired for

27  attempting to disband the gang.  (TAC ¶¶ 47-51, 57.)  Plaintiffs also claim more generally that the

28  City of Vallejo and Chief Bidou, as the VPD's final decision-maker, proximately caused the

2

1   violation of McCoy's constitutional rights by failing to address and/or ratifying the culture,

2   policy, or pattern and practice of officers using excessive force against citizens without

3   consequence.  (TAC ¶¶ 59, 61-63, 75-79.)

4        In December 2021, the undersigned granted in part plaintiffs' motion to compel

5   production of an independent internal investigative report compiled in 2021 regarding badge-

6   bending within the VPD ("the Giordano Report").  (ECF No. 147.)  The Giordano Report, which

7   the court reviewed in camera, revealed that some VPD officers and supervisors had bent their

8   badges (or badges of others) in connection with being involved in a shooting on duty.  As noted in

9   that order, the Report's findings did not necessarily confirm plaintiffs' theory of the reasons for,

10   or meaning of, officers bending their badges.  (ECF No. 147 at 8 n.4.)  However, the court

11   reasoned that

12         [t]he level to which bending badges pervaded the [VPD] such that
          Bidou and the City cannot claim reasonable ignorance of it, or
13         Bidou's actual knowledge of the badge bending is key to proving the
          <u>Monell</u> claim.  And evidence that any particular individual defendant
14         engaged in badge bending—or was inspired by a culture of badge
          bending or lackluster discipline in the VPD—would go toward
15         proving their motivation for shooting McCoy without warning and
          in the reckless manner alleged.
16   (<u>Id.</u> at 8.)

17        Discovery has continued since.  In August 2022, plaintiffs took the depositions of five

18   current or former members of the VPD, two of whom are named defendants in the case.[2]  During

19   each of these depositions, defense counsel instructed the deponent not to answer one or more

20   questions posed by plaintiffs' counsel.  After unsuccessful meet and confer efforts, plaintiffs

21   brought this motion to compel on August 30, 2022.  (ECF No. 174.)  Plaintiffs seek to compel

22   further depositions for each witness regarding all questions not answered due to an improper

23   instruction from defense counsel; and plaintiffs also request sanctions in the form of (a) requiring

24   defendants to carry the costs of the renewed deposition, and (b) paying plaintiffs' reasonable

25   attorney fees for bringing this motion.  (Joint Statement at 24-25, 28.)

26

27       [2]    The materials presented in support of this motion do not indicate the date of Lt. Kent
    Tribble's deposition, but the court assumes it was around the same time as the other four
28   depositions at issue, which occurred between August 16 and August 29, 2022.

1       At defendants' request, plaintiffs filed a redacted version of the Joint Statement on the

2   docket.  (ECF No. 180.)  Defendants simultaneously emailed to the court an unredacted version

3   of the Joint Statement, proposed redacted versions of numerous exhibits and declarations related

4   to the Joint Statement, and a request to seal/file the documents with redactions.  (See ECF

5   No. 181.)

6   **DISCUSSION**

7       **A.  Plaintiffs' Motion to Compel**

8           *1.  Legal Standard*

9       The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad.

10  Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or

11  defense and proportional to the needs of the case."[3]  Fed. R. Civ. P. 26(b)(1).  "The relevance

12  standard is extremely broad, especially in civil rights excessive force cases."  James v. Hayward

13  Police Dep't, 2017 WL 2437346, * 1 (N.D. Cal. Feb. 27, 2017) (citing Soto v. City of Concord,

14  162 F.R.D. 603, 610 (N.D. Cal. 1995)).  "Relevancy alone is no longer sufficient to obtain

15  discovery, the discovery requested must also be proportional to the needs of the case."  Centeno

16  v. City of Fresno, No. 1:16–CV–653 DAD SAB, 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29,

17  2016).  The court may limit discovery if it is "unreasonably cumulative or duplicative, or can be

18  obtained from some other source that is more convenient, less burdensome, or less expensive"; or

19  if the party who seeks discovery "has had ample opportunity to obtain the information by

20  discovery"; or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed.

21  R. Civ. P. 26(b)(2)(C).

22      "The party seeking to compel discovery has the burden of establishing that its request

23  satisfies the relevancy requirements of Rule 26(b)(1)."  Bryant v. Ochoa, 2009 WL 1390794 at *1

24  (S.D. Cal. May 14, 2009) (citations omitted).  "Thereafter, the party opposing discovery has the

25  burden of showing that the discovery should be prohibited, and the burden of clarifying,

26

27  [3]     Evidence is relevant if it has "any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
28  without the evidence."  Fed. R. Evid. 401.

4

1    explaining or supporting its objections." <u>Id.</u>  Notably, "the burdens on a motion to compel versus

2    a motion for protective order are reversed—with the party requesting discovery on a motion to

3    compel having to show relevance, but the request<u>ed</u> party having to show <u>ir</u>relevance on a motion

4    for protective order." <u>Food Mkt. Merchandizing, Inc. v. California Milk Processor Bd.</u>, No. 2:15-

5    CV-1083-TLN-CKD, 2022 WL 1811076, at *4 n.5 (E.D. Cal. June 2, 2022).

6         "A party seeking discovery may move for an order compelling an answer . . . . if . . . a

7    deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B)(i).

8    "Generally, instructions not to answer questions at a deposition are improper." <u>Vasquez v.</u>

9    <u>Leprino Foods Company</u>, No. 1:17-cv-0796-AWI-BAM, 2019 WL 1934015, at *2 (E.D. Cal.

10    May 1, 2019) (citing <u>Detoy v. City and County of San Francisco</u>, 196 F.R.D. 362, 365 (N.D. Cal.

11    2000)).  "A person may instruct a deponent not to answer <u>only</u> when necessary to preserve a

12    privilege, to enforce a limitation ordered by the court, or to present a motion under

13    Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2) (emphasis added); <u>see also</u> <u>Covington v. Curtis</u>, No. SA

14    CV 12–1258 FMO (ANx), 2013 U.S. Dist. LEXIS 53406, at *6 (C.D. Cal. Apr. 12, 2013)

15    (Rule 30(c)(2) "provides the exclusive grounds for instructing a deponent not to answer"

16    (quotation omitted)).  "If a party believes that a particular question asked of a deponent is

17    improper for any other reason, that party may object; however, 'the examination still proceeds;

18    the testimony is taken subject to any objection.'" <u>Mendez v. R+L Carriers, Inc.</u>, 2012 WL

19    1535756, at *1 (N.D. Cal. Apr. 30, 2012) (quoting Fed. R. Civ. P. 30(c)(2)).

20          *2.  Analysis*

21         Of the three exclusive scenarios that allow an instruction not to answer, only one (to

22    preserve privilege) is applicable to the depositions in question.  Here, there was no court-ordered

23    limitation of the deposition testimony, and defendants made no motion to terminate any of the

24    five depositions pursuant to Rule 30(d)(3).[4]  The court rejects defendants' arguments that many of

25

26    [4]     See Fed. R. Civ. P. 30(d)(3)(A) ("At any time during a deposition, the deponent or a party

27    may move to terminate or limit it on the ground that it is being conducted in bad faith or in a
manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."); <u>Mashiri v.</u>

28    <u>Ocwen Loan Servicing, LLC</u>, No. 12CV2838-L MDD, 2014 WL 4608718, at *2 (S.D. Cal.
Sept. 15, 2014) (noting that "Rule 30(d)(3) requires the motion be made during the deposition").

5

1    the instructions not to answer were to enforce a limitation ordered by the court by virtue of the

2    undersigned's rulings on the degree to which the Giordano Report could be redacted before being

3    produced to plaintiffs' counsel.  (Joint Statement at 5, 17, 19, 23, 29, 31.)  Although the court

4    acknowledges the parallels between some of the information ordered redacted in the Giordano

5    Report and the topics of questioning challenged at the deposition, the court's December 2021

6    discovery order (ECF No. 147) did not constitute a court ordered limitation of permissible

7    deposition topics within the meaning of Rule 30(c)(2).

8            Therefore, the only permissible basis for defense counsel's instructions not to answer was

9    to preserve a privilege.  A review of the deposition transcripts reveals that defense counsel

10   instructed deponents not to answer based on a wide variety of objections:  privacy, outside the

11   scope of discovery, calling for improper opinion, irrelevance, argumentative question, abusive or

12   harassing line of questioning, proportionality, overbreadth and ambiguity, speculation, improper

13   hypothetical, official information privilege.  All of these grounds—except for privacy and the

14   official information privilege—are patently improper grounds for instructing a witness not to

15   answer.  See, e.g., Boyd v. University of Maryland Med. System 173 F.R.D. 143, 147 (D. Md.

16   1997) (instruction not to answer is "presumptively improper"); Vasquez, 2019 WL 1934015,

17   at *6 (instruction not to answer based on relevance or as outside the scope of discovery are

18   improper); Arcadian Cap., LLC v. Cura Partners, Inc., 2021 WL 1153356, at *1 (C.D. Cal.

19   Feb. 22, 2021) (objection of calling for legal opinion not proper basis for instruction not to

20   answer); Robinson v. Chefs' Warehouse, 2017 WL 4509142, at *3 (N.D. Cal. Oct. 10, 2017)

21   (finding improper instructions not to answer based on exceeding the scope, harassing the witness,

22   lack of relevance); see also Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-A

23   § 11:1565 ("Rule 30(c)(2) renders 'relevancy' objections meaningless in most depositions.  The

24   deponent must even answer questions calling for blatantly irrelevant information 'subject to the

25   objection.'").

26           Although the court understands defense counsel's desire to cut short certain lines of

27   questioning that defense counsel deemed invasive and/or irrelevant, the proper remedy was not to

28   simply instruct the deponent not to answer—unless to invoke a particular privilege.  See Mashiri,

1   2014 WL 4608718, at \*2 ("If counsel for Plaintiff believed that counsel for Defendant was asking

2   the same question repeatedly in bad faith or to unreasonably annoy, embarrass or oppress

3   Plaintiff, counsel's option was to move to terminate or limit the deposition under

4   Rule 30(d)(3).");  Cobell v. Norton, 213 F.R.D. 16, 27 (D.D.C. 2003) (alleged "harassment" is not

5   a proper ground for instructing witness not to answer).  On at least two occasions, defense

6   counsel instructed a deponent not to answer while expressly confirming—in answer to plaintiffs'

7   counsel—that he was not basing that instruction on any privilege.  (See Ramsay Depo. pp. 94-95;

8   Horton Depo. p. 129.)

9        The only arguable privileges counsel asserted as grounds for the instructions not to answer

10  were the right to privacy and the official information privilege.  The court sets out the general

11  standards for assessing these two types of objections before then addressing the individual

12  depositions.

13              *i.   Privacy Objections*

14       Although privacy is not technically a "privilege," see E.E.O.C. v. California Psychiatric

15  Transitions, 258 F.R.D. 391, 395 (E.D. Cal. 2009) ("the right to privacy is not a recognized

16  privilege or absolute bar to discovery"), courts sometimes entertain privacy objections as

17  potentially proper bases for instructions not to answer.  See Toman v. Glomboske, 2021 WL

18  3503062, at \*4-5 (C.D. Cal. Mar. 25, 2021) (analyzing privacy objections as basis for protective

19  order to preclude further depositions); Williams v. City of Long Beach, 2020 WL 7059601, at \*2

20  (C.D. Cal. Oct. 27, 2020) (addressing privacy rights of non-party police officers on motion to

21  compel further deposition testimony); McClure v. Prisoner Transportation Servs. of Am., LLC,

22  No. 1:18-CV-00176-DAD-SKO, 2020 WL 1182653, at \*2-3 (E.D. Cal. Mar. 12, 2020)

23  (proceeding to assess privacy objection after finding improper instructions not to answer based on

24  relevance or scope); Robinson, 2017 WL 4509142, at \*2-3 (assessing privacy objection as basis

25  for instruction not to answer, before ultimately overruling that objection).  But see Mashiri, 2014

26  WL 4608718, at \*2 (finding that none of the asserted objections, including "objections based

27  upon privacy" justified an instruction not to answer, while also noting that stipulated protective

28  order obviated privacy concerns); Arcadian Cap., 2021 WL 1153356, at \*1 (finding relevance,

privacy, and calling for legal opinion not proper bases for instruction not to answer, and noting that protective order could address any legitimate privacy concerns).

"Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted." Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995); see Laub v. Horbaczewski, 331 F.R.D. 516, 522 (C.D. Cal. 2019). "In the context of the disclosure of police files, courts have recognized that privacy rights are not inconsequential." Soto, 162 F.R.D. at 616 (citing Kelly, 114 F.R.D. at 660). "However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." Id. Further, a carefully drafted protective order can "minimize the impact" of disclosure. Id.

*ii. Objections Based on the Official Information Privilege*

"Federal common law recognizes a qualified privilege for official information." Soto, 162 F.R.D. at 613 (citing Kerr v. U.S. Dist. Ct. for N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1975)). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." Id. "In the context of civil rights suits against police departments, this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" Id. (quoting Kelly v. City of San Jose, 114 F.R.D. 653, 661 (N.D. Cal. 1987)).

A party raising an official information privilege objection must first make a "substantial threshold showing," in the form of "a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." Id. A so-called Kelly affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests[;] and (5) a projection of how much harm would be done to the threatened interests if

1  disclosure were made.

2  Id. at 613 (citing Kelly, 114 F.R.D. at 670).

3      The party resisting discovery must specifically describe how disclosure of the requested

4  information in that particular case would be harmful.  Soto, 162 F.R.D. at 613-14.  If the opposing

5  party fails to meet the threshold burden requirement of establishing cause to apply the privilege,

6  the privilege will be overruled.  Chism v. County of San Bernardino, 159 F.R.D. 531, 533 (C.D.

7  Cal. 1994).  If the Kelly affidavit is found sufficient, then the court proceeds to balance the

8  parties' interests.  Soto, 162 F.R.D. at 613.

9      At the subject depositions, defense counsel instructed only former Captain Lee Horton not

10 to answer questions based on the official information privilege.  As their Kelly affidavit in

11 support of this objection, defendants provide a declaration by City of Vallejo Assistant City

12 Attorney Katelyn Knight, who represents both the City and the individual VPD officers in this

13 case (alongside private defense counsel).  (ECF No. 181.2.)  The court finds that Ms. Knight's

14 affidavit satisfies the first three elements of the Kelly test.  Although Ms. Knight is not an official

15 within the VPD itself, she is unquestionably a City official with knowledge of the matters

16 plaintiffs' counsel sought to elicit from Horton:  the nature of the City's litigation with Captain

17 Whitney and the VPD personnel investigations that may have factored into his discharge.  See

18 Soto, 162 F.R.D. at 613 (requiring "a declaration or affidavit from a responsible official with

19 personal knowledge of the matters to be attested to in the affidavit").[5]  The court addresses the

20 final two elements in the context of the individual objections asserted at former Captain Horton's

21 deposition.

22 ////

23 ////

24 _____

25 [5]      The unredacted version of the Knight declaration that defendants emailed to the court and
   to plaintiffs' counsel in support of their Request to Seal contains only those pages of the
26 declaration that contain the proposed redactions, causing plaintiffs' counsel to object that the
   declaration is unsigned and cut off.  (See Oppo. to Req. to Seal at 3-4.)  However, defendants
27 filed a complete and signed version of the Knight declaration on the docket.  (ECF No. 181.2.)
   Defense counsel should avoid this confusing approach in the future—and should also mark all
28 proposed redactions in documents emailed to the court with requests to seal.

1          *iii.  Thompson Deposition*

2          With respect to the deposition of defendant Officer Mark Thompson, only one

3   unanswered question is at issue in this motion.  Plaintiffs' counsel asked Officer Thompson, who

4   was one of the six officers involved in the McCoy shooting, how many alcoholic beverages he

5   typically drinks on his days off.  (Joint Statement at 9, 16; Thompson Depo. p. 37.)  Defense

6   counsel objected to the question based on privacy and being outside the scope of discovery, and

7   instructed Thompson to answer only as to around the time of the incident in February 2019.

8   (Thompson Depo pp. 37-40.)

9          Exceeding the scope of discovery is not a proper ground for an instruction not to answer.

10  As for the privacy objection, the court balances plaintiffs' need for the information (i.e., its degree

11  of relevance) against the officer's privacy interest.  Officer Thompson answered how much and

12  what type of alcohol he typically drank in February 2019, which was undisputedly relevant to his

13  reaction time and competence at the shooting.  Plaintiffs argue at a high level of generality that

14  VPD members' <u>present</u> drinking habits are relevant because "[m]any officers" have denied

15  excessive drinking during and before the shooting, and their present drinking habits "impact the

16  credibility of those statements."  (Joint Statement at 27.)  Plaintiffs fail to develop this

17  impeachment argument and offer no explanation for the relevance of Officer Thompson's present

18  drinking habits in particular.  <u>See Bryant</u>, 2009 WL 1390794 at *1 (party moving to compel has

19  burden to show relevance of requested discovery).  On the other side, the court sees a slight

20  privacy interest in not sharing the details of an officer's alcohol consumption—albeit quite a

21  minimal interest in light of the existing protective order (ECF No. 21).

22         Given that plaintiffs raise no other subjects to be addressed further with Officer

23  Thompson, the court will not order a reconvening of his deposition for this one question.

24                *iv.  Glick Deposition*

25         As to the deposition of defendant Officer Bryan Glick, plaintiffs' motion challenges three

26  questions that went unanswered at defense counsel's instruction:  one question soliciting Officer

27  Glick's opinion of how another officer should have been disciplined for his conduct in the McCoy

28  shooting, and two questions asking if Officer Glick felt harassed or upset by this line of

1  questioning (in response to defense counsel's objections on those grounds).  (Joint Statement

2  at 11-12, Glick Depo. at 11:33:43 – 11:36:48.)

3        Defense counsel did not ground his instructions not to answer in any privilege, though he

4  referenced the privacy rights of the other officer about whom plaintiff's counsel was inquiring.

5  As laid out above, an instruction not to answer is not an appropriate response to purportedly

6  irrelevant or harassing lines of questioning.[6]  Regarding the first question, the court need not

7  decide whether the other officer's privacy interests outweigh plaintiff's need for the disputed

8  opinion testimony from Officer Glick because, again, plaintiffs fail to make any argument as to

9  why this testimony is relevant to their claims.  As to the second two questions, although the court

10  does not condone the improper instructions not to answer (as reflected in the sanctions ordered

11  below), the court also sees no conceivable need to reconvene a deposition to determine whether

12  Officer Glick felt harassed at his August 17 deposition.

13        Plaintiffs' motion is denied as to Officer Glick's deposition as well.

14                *v.*  *K. Tribble Deposition*

15        From the deposition of former Lieutenant Kent Tribble, plaintiffs likewise challenge three

16  questions that went unanswered at defense counsel's instruction:  two regarding Tribble's

17  drinking habits and one regarding Tribble's recreation habits with an officer who had a bent

18  badge and had bent other officers' badges.  (Joint Statement at 10.)  Tribble is not a defendant in

19  this case, but he was one of 6–9 lieutenants within the VPD during the time of the McCoy

20  shooting—placing him two ranks below the Chief (just after the two captains) at the time.  (Joint

21  Statement at 6, 10.)  Tribble retired from the VPD in 2021.  (Tribble Depo. p. 226.)

22        Defense counsel instructed Tribble not to answer any questions regarding his drinking

23  habits—whether before, during, or after the McCoy shooting—on privacy grounds; and counsel

24  also asserted privacy as the basis for not answering the question about Tribble's recreation with

25

_____

26  [6]      The court acknowledges that defense counsel attempted to contact the undersigned during
   Officer Glick's deposition and was informed that the undersigned was unavailable.  (Glick Depo.
27  at 11:50:59.)  For any future depositions where the parties anticipate needing real-time rulings on
   deposition challenges, the parties are encouraged to contact the Courtroom Deputy in advance to
28  request the undersigned's availability that day.

1   the other officer.  (Tribble Depo. pp. 162-63, 227-28.)

2           In conducting the privacy balancing on these topics, the court concludes that testimony

3   about Tribble's drinking habits surrounding the McCoy shooting is relevant to plaintiffs' <u>Monell</u>

4   claim; whereas testimony about Tribble's <u>present</u> drinking habits is not.  Plaintiffs are pursuing a

5   theory that badge-bending occurred as part of an overall VPD culture of drinking after shooting

6   incidents, and that the department tolerated an environment of alcohol abuse that encouraged

7   officers to use excessive force.  Therefore, the court rejects defendants' argument that alcohol use

8   at or before the shooting "is only relevant as to shooting officers."  (Joint Statement at 17.)  As a

9   VPD commander at the time, Tribble's drinking habits before and surrounding the incident bear

10  on the question of whether the VPD's higher-ranking members may have been drinking to a level

11  that could impact (a) their competence and ability to prevent or discipline problematic rituals and

12  uses of excessive force, or (b) the credibility of their testimony about that period.  The court notes

13  that public testimony by Tribble from March 2022 in an unrelated state court criminal case

14  suggests that Tribble brought the badge-bending practice to the VPD in 2003 and that he bent the

15  badges of at least 11 VPD officers involved in shootings.[7]  (Joint Statement at 6.)  Another more

16  junior VPD officer also publicly testified in that criminal case that he viewed Tribble as a

17  "reckless," "scary" person with an alcohol problem.  (ECF No. 180.4 at 4, 8-9; Transcript of

18  3/22/2022 morning session in <u>California v. Dominic James Milano</u>, No. VCR233208, (Cal.

19  Super. Ct. Solano Cty.)  This makes questioning Tribble on his alcohol consumption around the

20  time of the McCoy shooting all the more likely to yield relevant testimony.

21           VPD supervisors' alcohol use <u>following</u> the shooting and up to the end of 2020 (by which

22  point the badge-bending practice was becoming publicly known) is also relevant because

23  plaintiffs claim that the VPD also had a culture of not investigating and/or covering up

24  misconduct—and supervisors' levels of competence and credibility would bear on the degree to

25  which that culture persisted after the McCoy shooting.  However, as with Officer Thompson

26  (above), plaintiffs have not demonstrated how the <u>present</u> drinking habits of VPD members

27  ────────────────

28  [7]      The court has not reviewed the entirety of the transcripts from that criminal case, but
    defendants do not dispute this characterization of the testimony.

1    (whether officers or supervisors) are relevant.

2        On the other side of the balance, whatever minimal privacy interest Tribble possesses in

3    his past drinking habits can be adequately protected by designating it Confidential under the

4    parties' protective order.  See <u>Arcadian Cap.</u>, 2021 WL 1153356, at *1 (finding on motion to

5    compel further deposition testimony that to the extent deponent's responses implicate legitimate

6    privacy concerns, they could be subject to the existing protective order).  Accordingly, the court

7    will grant plaintiffs' motion as to Tribble's deposition.

8        Defendants propose that plaintiffs should propound additional interrogatories to gather

9    answers to any questions that the court orders must still be answered.  (Joint Statement at 32.)

10   However, written discovery seems an inefficient method of resuming this line of questioning

11   which might require additional and unforeseeable follow-up questions, depending on Tribble's

12   answers.  Therefore, the court will order the resumption of a limited deposition of Kent Tribble.

13       As to the recreation-related question, plaintiffs argue that the desired testimony is relevant

14   to show how Tribble and another officer spent time together and whether it is credible that they

15   never discussed badge bending before the McCoy shooting.  The court finds this topic relevant,

16   and the protective order will similarly protect whatever purported privacy interest Tribble has in

17   his sporting habits.  Although the specific unanswered question appears to have very limited

18   utility, and Tribble already answered many of plaintiffs' counsel's more relevant questions on the

19   topic, the court orders Tribble to answer this final line of questioning given that his further

20   testimony is already being required as to the alcohol topic.

21       **Therefore, the court orders that Kent Tribble's deposition be resumed for the**

22   **limited purpose of eliciting his testimony on the above-identified topics.**  That testimony shall

23   be designated Confidential under the stipulated protective order, unless both sides agree

24   otherwise.

25                  *vi.  Ramsay Deposition*

26       Next, plaintiffs challenge some 14 questions that Captain Drew Ramsay was instructed

27   not to answer at his deposition.  (Joint Statement at 10-11.)  Like Tribble, now-Captain Ramsay is

28   not a defendant in this case, but around the time of the McCoy shooting he was a sergeant (the

                                    13

1  rank just below lieutenant) charged with internal affairs investigations at the VPD.  (Ramsay
2  Depo. p. 98.)

3       Defense counsel instructed Ramsay not to answer the first 8 questions at issue based on
4  objections that included an assertion of the right to privacy, and those are analyzed further below.
5  For the remaining 6 questions, no privilege was asserted in support of the instructions not to
6  answer.  (Ramsay Depo. pp. 55-56, 94-97.)  Defense counsel rested the instructions exclusively
7  on objections like calling for improper opinion, relevance, proportionality, and
8  argumentativeness.  (Id.)  This was improper, as explained above.  However, a review of the
9  transcript satisfies the court that Captain Ramsay essentially answered 4 of the final 6 questions
10  anyway,[8] and that the other 2 questions would not yield relevant testimony.[9]  Plaintiffs fail to
11  spell out their argument for the relevance of the testimony they seek to compel from Captain
12  Ramsay, resting instead on the fact that defense counsel's instructions violated Rule 30(c)(2).
13  While breaking the rules warrants sanctions, it does not automatically warrant compelling the
14  underlying testimony at issue.

15       As to the 8 privacy-based objections, the first 5 questions Ramsay was instructed not to
16  answer asked about Ramsay's current height and weight, former weight at the time of the
17  shooting, whether he experienced weight issues due to the shooting, his exercise routine before
18  and after the incident, and whether he attributed any change in that routine to the shooting.
19  (Ramsay Depo pp. 24-27.)  Again, plaintiffs fail to explain the relevance of these subjects.
20  Ramsay was not involved in the McCoy shooting, and it is totally unclear how his height or
21  weight might factor into the Monell claim.  The court also will not guess at the relevance of any
22  changes in Ramsay's weight or exercise routine following the shooting.  Accordingly,
23  defendants' privacy objection is sustained for these 5 questions.

24       The 6th question Ramsay was instructed not to answer was regarding his current drinking
25  and illicit drug use.  (Ramsay Depo pp. 27-28.)  Ramsay answered both questions as to the time

26  ───────────────
27  [8]    See Ramsay Depo page 55, lines 18-19; page 56, lines 12-16; page 94, lines 20-24;
page 95, lines 12-15.

28  [9]    See Ramsay Depo page 55, lines 11-13; page 96, line 22 to page 97, line 1.

1   surrounding the shooting (both while on duty and off duty); testified that he has never used drugs

2   as a member of the VPD (id. pp. 28-31); and, as with Officer Thompson and Lt. Tribble, plaintiffs

3   fail to show the relevance of whether Ramsay currently drinks.  Defendants' privacy objection is

4   sustained for the 6th question as well.

5          Finally, the 7th and 8th unanswered questions asked Ramsay about how and why he used

6   to live with another member of the VPD.  (Ramsay Depo. p. 33.)  Defense counsel instructed

7   Ramsay not to answer based on privacy and based on a theory that in permitting certain

8   redactions to the Giordano Report the court had previously precluded discovery regarding

9   officers' personal living arrangements.  (Id.; see Joint Statement at 19.)  The court's prior ruling

10  on redactions in the Giordano Report should not be construed so broadly.  Discovering the nature

11  of the relationships between members of the VPD reasonably close to the time of the McCoy

12  shooting (say, within 5 years or so) is relevant to plaintiffs' Monell claim because that

13  information would bear on the likelihood that knowledge of the badge-bending practice was not

14  widespread and did not reach Chief Bidou before the shooting.  However, in this particular

15  instance, the court knows from its prior in camera review of the Giordano Report that these

16  deposition questions were inquiring about Ramsay's living situation for a 6-month period in

17  2005.  While more recent shared housing experiences between VPD members might be relevant

18  to the level of awareness about badge bending, the questions about who Ramsay lived with

19  14 years before the McCoy shooting is not.  These privacy objections are sustained as well.

20          Therefore, plaintiffs' motion is denied as to Captain Ramsay's deposition.

21                  vii. Horton Deposition

22          The fifth and final deposition at issue is that of former Captain Lee Horton, who was one

23  of Chief Bidou's two captains at the top of the VPD (alongside Captain Whitney) at the time of

24  the McCoy shooting.  (Joint Statement at 6, 12.)  Horton retired from the VPD in 2020 and is not

25  a defendant in this case.

26          By the court's count, Horton did not answer some 16 questions at defense counsel's

27  instruction.  Of these unanswered questions, all but 2 of the instructions were based on objections

28  that included the right to privacy and/or the official information privilege.  The court takes each

15

1    question or set of questions in turn.

2            As with Ramsay's deposition, the first set of (four) questions Horton was instructed not to

3    answer asked about Horton's current height and weight, his former weight at the time of the

4    shooting, any weight change since the shooting, and whether the shooting impacted his physical

5    health.  (Horton Depo. pp. 20-21, 24-26.)  For the same reasons just discussed with Ramsay, the

6    court sustains defendants' privacy objection for these 4 question.

7            Likewise, the court sustains the privacy objections asserted for the 5th question (id.

8    page 26, lines 22-25), 6th question (id. page 27, lines 5-8), and 16th question (id. page 154,

9    lines 14-15) that Horton was instructed not to answer, because of plaintiffs' failure to explain the

10   relevance of the answers to these questions probing into medical information.

11           The 7th, 10th, and 12th questions Horton was instructed not to answer inquired about

12   information that Horton learned about fellow Captain Whitney in 2017, Horton's opinion of

13   Whitney based on the information learned, and their subsequent conversation(s) about that

14   information.  (Id. pp. 49-51, 59.)  Defense counsel instructed Horton not to answer, or to limit his

15   answers to, these questions based on (i) Captain Whitney's right to privacy and (ii) the official

16   information privilege because the information Horton learned about Whitney in 2017 became the

17   subject of a personnel investigation of Captain Whitney.  The court need not decide whether

18   defense counsel could properly instruct Horton not to answer based on the privacy rights of

19   Captain Whitney, whom they do not represent, because the court sustains the official information

20   privilege objection.

21           Defendants argue, in Ms. Knight's Kelly affidavit, that permitting Horton to answer these

22   questions would have required him to divulge the contents of three VPD personnel investigations,

23   one of which ultimately resulted in Captain Whitney's termination and is the subject of the

24   Whitney's ongoing employment lawsuit against the City.  (ECF No. 181.2 ¶ 3.)  Defendants

25   further argue that Horton's testimony on the matters underlying the personnel investigation(s)

26   would potentially subject the City to further liability in that suit for revealing confidential

27   employment records protected under California law.  (Id. ¶ 5.)  This argument is bolstered by the

28   fact that Whitney's counsel in the employment litigation has requested a protective order to cover

                                                    16

1    the personnel investigation that resulted in Whitney's termination.  (Id. ¶ 7.)

2           As for why the stipulated protective order does not adequately protect against these risks,

3    defendants argue that disclosure even to plaintiffs and plaintiffs' counsel would create this risk of

4    additional liability—and violate Horton's and Whitney's privacy rights.  (Id.)  In balancing these

5    interests against plaintiffs' need for the testimony, the court finds that the risks of harm to

6    defendants wins out with respect to these three questions.  In the deposition, plaintiffs' counsel

7    obtained Horton's testimony as to the nature of his relationship with Captain Whitney, his opinion

8    of Captain Whitney, and the general basis for that opinion.  Given the City's averment that the

9    resulting personnel investigations of Captain Whitney had nothing to do with badge bending or

10   any use of force, the court does not see a great enough need for plaintiffs to discover the precise

11   reasons for Horton's and Whitney's relationship being as it was.

12          The 8th, 9th, 13th, and 15th questions Horton was instructed not to answer all related to

13   his relationship with Chief Bidou prior to the McCoy shooting.  Although Horton was instructed

14   not to answer the 8th question (Horton Depo. page 55, lines 6-7), he had in fact previously

15   answered that question (Horton Depo. page 51, line 7 to page 52, line 22).  Skipping to the 15th

16   question (Horton Depo. page 137, line 11), the court cannot tell from the limited excerpt of the

17   transcript what topic was being discussed when Horton was instructed not to answer—and it

18   appears the question may have been sufficiently answered despite defense counsel's instruction.

19          As for the 9th and 13th unanswered questions, however, the court overrules defense

20   counsel's objections.  The 9th question (Horton Depo. page 55, line 18) and the 13th question

21   (Horton Depo. page 103, lines 22-23) bear directly on one of the central aspects of the Monell

22   claim:  the nature of the relationship between Chief Bidou and his second-in-command captains,

23   including Captain Horton, and how they communicated with one another around the time of the

24   McCoy shooting.  The Kelly affidavit from Ms. Knight speaks only to the risk of harm from

25   disclosing details of the personnel investigations of Captain Whitney.  While those details need

26   not be disclosed (as just discussed), it appears likely that Horton could answer questions 9 and

27   13—and related follow-up questions—without necessarily revealing such details.

28   ////

                                                   17

1    Accordingly, the court overrules the official information privilege objection asserted for

2    question 9.  The court also sees no basis to sustain defendants' instruction not to answer

3    question 9 based on the other objections of privacy or relevance.  Defense counsel asserted no

4    privilege at all in support of the instruction not to answer question 13.  (Horton Depo pp. 103-04,

5    stating only that it was argumentative, irrelevant, not proportional, and seeking improper

6    opinion.)

7    The final disputed question 14 asked whether Horton had any interest in reading the

8    public testimony given by members of the VPD (including Tribble, as mentioned above) in the

9    Milano state court criminal case.  (Horton Depo. p. 129.)  Defense counsel instructed Horton not

10   to answer purely based on non-privilege objections.  (Id., asserting improper opinion,

11   argumentative, irrelevant, and expressly disclaiming assertion of any privilege.)  This is another

12   example of a patently improper instruction not to answer.  However, the court also sees no utility

13   in allowing plaintiffs to inquire further into Horton's level of interest in reading the Milano

14   testimony.

15   **Therefore, the court orders that Lee Horton's deposition be resumed for the limited**

16   **purpose of eliciting his testimony on the above-identified questions 9 and 13, and follow-up**

17   **questions related to the nature of Horton and Bidou's relationship and how they**

18   **communicated with each other from 2017 through Bidou's retirement in 2019.**  That

19   testimony shall be designated Confidential under the stipulated protective order, unless both sides

20   agree otherwise.

21                          *3.  Sanctions*

22   Under Rule 37, if a motion to compel discovery is granted in part and denied in part, the

23   court may "apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).  As to

24   depositions, under Rule 30, "[t]he court may impose an appropriate sanction—including the

25   reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays,

26   or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  District courts have

27   wide discretion in imposing sanctions under both of these subsections.  See Morgan Hill

28   Concerned Parents Ass'n v. California Dep't of Educ., 2017 WL 3116818, at *5 (E.D. Cal.

18

1  July 21, 2017) (Rule 37(a)(5)(C)); <u>Batts v. Cty. of Santa Clara</u>, 2010 WL 545847, at *2 (N.D.

2  Cal. Feb. 11, 2010) (Rule 30(d)(2)).  As Rule 30(d)(2) sanctions, courts frequently impose re-

3  deposition costs where "counsel was unjustified in instructing a deponent not to answer."  <u>Lucas</u>

4  <u>v. Breg, Inc.</u>, 2016 WL 2996843, at *2 (S.D. Cal. May 13, 2016) (quotation omitted).

5          Here, the court is granting only a small fraction of plaintiffs' motion to compel by

6  ordering the reconvening of two of the five depositions, and only for very limited lines of inquiry.

7  The court therefore imposes no attorney's fees sanctions under Rule 37, leaving each side to bear

8  its own costs and expenses for litigating this motion.  <u>See</u> Fed. R. Civ. P. 37(a)(5)(C).  Based on

9  plaintiffs' counsel's failure to adequately support much of their motion to compel, an attorneys'

10  fees award would not be in the interests of justice.  <u>See</u> Fed. R. Civ. P. 37(a)(5)(A)(iii).

11         However, sanctions under Rule 30(d)(2) are warranted by defense counsel's continuous

12  invocation of non-privilege-based reasons to instruct deponents not to answer.  Even when

13  plaintiffs' counsel pointed out that defense counsel's instructions went against Rule 30, defense

14  counsel continued to instruct the above deponents not to answer based on his belief that the

15  questioning was too irrelevant or invasive.  While the court ultimately agreed with defense

16  counsel in several instances listed above, defense counsel's conduct still plainly violated the

17  federal rules.  <u>See</u> <u>Lucas</u>, 2016 WL 2996843, at *4 ("Regardless of whether a judge would have

18  permitted such questions, Plaintiffs' counsels' role during a deposition does not include the

19  authority to essentially rule on their own objections and determine whether such questions need to

20  be answered.").

21         Because these violations necessitate the reconvening of two depositions, the court will

22  require defense counsel to bear any reasonable expenses associated with facilitating the follow-up

23  depositions of Lee Horton and Kent Tribble.  <u>See, e.g.</u>, <u>McClure</u>, 2020 WL 1182653 at *6.

24         **B.  Defendants' Request to Seal**

25         Finally, the court turns to defendants' request to seal and/or redact portions of the Joint

26  Statement and the declarations and exhibits offered in support.  (<u>See</u> ECF No. 181.)  Defendants

27  request that the court protect from public view (1) most (but not quite all) of the excerpts of the

28  five subject depositions—all of which were designated Confidential under the parties' stipulated

19

1    protective order; (2) various portions of the Joint Statement that discuss materials designated

2    Confidential; and (3) a few lines of Ms. Knight's declaration.[10]

3        Plaintiffs filed on the docket the Joint Statement with redactions proposed by defendants,

4    along with several exhibits.  (ECF No. 180.)  Defendants emailed their request to seal directly to

5    the court, along with unredacted versions of the Joint Statement and further exhibits that they

6    propose be filed under seal or with redactions.  Plaintiffs oppose the request to seal and emailed

7    their opposition directly to the court along with several additional exhibits; and defendants

8    emailed a reply along with three more exhibits.[11]

9        *1. Legal Standard*

10       "[T]here is a 'strong presumption in favor of access' to information filed with a court."  In

11   re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 429 (9th Cir. 2011) (quoting

12   Kamakana v. City and Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006)).  In general, to

13   overcome the presumption, a party seeking to seal judicial records must demonstrate not just

14   "good cause," but "compelling reasons."  Id. (citations omitted).  "Despite this strong preference

---

15   [10]    Defendants also request the sealing of a sixth deposition (Req. to Seal, Exhibits 11-12)
16   and two sets of responses to Requests for Admission (Req. to Seal, Exhibits 13-14).  The court
     did not rely upon these exhibits and STRIKES them from the record.  Accordingly, defendants
17   shall omit these exhibits when re-filing their redacted exhibits as ordered herein.

18   [11]    Plaintiffs also submitted an Objection and Request to Strike defendants' reply brief and its
19   exhibits, which were emailed to the court on September 23, 2022, four days after plaintiffs
     submitted their opposition.  Plaintiffs are correct that Local Rule 141 does not contemplate reply
20   briefs in support of requests to seal—only expressly inviting opposition briefs within three days
     of the filing of a Notice of Request to Seal.  See L.R. 141(c).  The court does not condone
21   defendants' decision to submit an uninvited reply with additional exhibits four days after
     plaintiffs' opposition; however, the court had already reviewed the reply brief before receiving
22   plaintiffs' objection.  Because the reply brief proved useful to the court's understanding of the
     issues, the court exercises its discretion to accept the reply in this instance.  However, the court
23   had no occasion to review or rely upon the three exhibits attached to the reply.  The court
     therefore STRIKES the supplemental Slentz Declaration and the three exhibits thereto, labeled
24   Exhibits 16-18.  Accordingly, the court does not order these documents to be filed on the docket
25   (under seal or otherwise).

26       On a separate but similar note, the court finds no utility in the exhibits attached to
27   plaintiffs' opposition brief.  Accordingly, the court STRIKES the Buelna Declaration and the five
     exhibits attached thereto.  Accordingly, the court does not order these documents to be filed on
28   the docket (under seal or otherwise).

for public access," the Ninth Circuit has "carved out an exception for sealed materials attached to

a discovery motion unrelated to the merits of a case."  Ctr. for Auto Safety v. Chrysler Grp., LLC,

809 F.3d 1092, 1097 (9th Cir. 2016) (cleaned up).  When this exception applies, a party seeking

to file under seal "need only satisfy the less exacting 'good cause' standard" found in Rule 26(c).

Id.; see Fed. R. Civ. P. 26(c)(1) (stating that a court "may, for good cause, issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense").  The documents defendants wish to file under seal or with redactions are all offered as

part of, or in support of, the instant non-dispositive discovery motion.  Thus, as the parties agree,

defendants must demonstrate "good cause" for the protection sought.  See Nixon v. Warner

Commc'ns, Inc., 435 U.S. 589, 599 (1978) (decisions on public access are "best left to the sound

discretion of the trial court, a discretion to be exercised in light of the relevant facts and

circumstances of the particular case").

        To establish good cause, first, the party seeking protection (here, defendants) must show

that "specific prejudice or harm will result," absent sealing.  See Foltz v. State Farm Mut. Auto.

Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003).  "Broad allegations of harm, unsubstantiated by

specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  Beckman

Industries, Inc. v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992).  "A party asserting

good cause bears the burden, for each particular document it seeks to protect, of showing that

specific prejudice or harm will result if no protective order is granted."  Foltz, 331 F.3d at 1130.

This court's local rules echo these principles by requiring requests to seal to "describe generally

the documents sought to be sealed, the basis for sealing," and the "statutory or other authority for

sealing," among other things.  E.D. Cal. R. 141(b).

        Second, if the court concludes that denying protection will cause particularized harm, it

must balance "the public and private interests" to decide whether protection is necessary.  Roman

Catholic, 661 F.3d at 424.  The Ninth Circuit has instructed district courts to conduct this

balancing under the factors identified in Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d

Cir. 1995).  See Roman Catholic, 661 F.3d at 424.  But even when both analytical steps weigh in

favor of protecting the material "a court must still consider whether redacting portions of the

21

1    discovery material will nevertheless allow disclosure." Id. at 425.

2                    *2. Analysis*

3          As a threshold matter, defendants maintain that plaintiffs are attempting to use this motion

4    as a vehicle to make public significant amounts of discovery material currently designated

5    Confidential under the parties' stipulated protective order ("SPO"), without following the

6    procedure outlined in the SPO for challenging a confidentiality designation.  (Joint Statement

7    at 15; ECF No. 181.1 (Slentz Decl.), Ex. B; Reply ISO Request to Seal at 2, 6.)  The court

8    understands defendants' complaint to be that they have been deprived of the meet-and-confer

9    requirements set forth in Section 6.2 of the SPO and have had to brief the good cause for retaining

10   the confidentiality of the subject materials on a more expedited basis than they otherwise would if

11   plaintiff had challenged the Confidentiality designations as provided in Section 6 of the SPO.

12   (Reply ISO Request to Seal at 6.)

13         The court shares defendants' suspicion that plaintiffs wish to make public as much

14   discovery information as possible related to badge-bending within the VPD.  The court will

15   continue to serve as an intermediary in that regard, ensuring that only information whose value to

16   the public outweighs the confidentiality interests hits the public record.  See Glenmede Tr. Co.,

17   56 F.3d at 483 (good cause factors).  However, the court does not see how plaintiffs' counsel has

18   acted contrary to either this court's Local Rules or the terms of the SPO in litigating this motion

19   and the request to seal.  While plaintiffs' portion of the Joint Statement indeed contains far more

20   Confidential-designated information than required for the motion to compel (see Joint Statement

21   at 7-9), plaintiffs filed the Joint Statement with all of defendants' proposed redactions.  Plaintiffs'

22   counsel did not, nor does it appear they ever intended to, publicly file any Confidential-

23   designated information on the docket.

24         This court's process for a movant requesting to file under seal documents designated

25   confidential by an opposing party is that the movant files on the docket a notice of the request to

26   seal and sends to the court a request to seal (along with the subject materials) advising that the

27   request is based on an opposing party's designation of the materials as confidential under a

28   stipulated protective order.  The non-movant party who designated the materials confidential then

1   bears the burden of making the necessary showing to justify protection under Local Rule 141 and

2   the case law set forth above.  This is precisely what plaintiffs' counsel offered to do with this

3   motion, although defendants opted to instead file the sealing notice themselves.  (ECF No. 181.)

4        Plaintiffs' decision to oppose defendants' request to seal also does not violate either the

5   letter or the spirit of the SPO.  Defendants continue to argue, as they did in their last request to

6   seal (accompanying plaintiff's motion to compel production of the Giordano Report) that "there is

7   a rebuttable presumption that records subject to a protective order should be ordered sealed."

8   (Request to Seal at 3.)  The court already informed defendants that no such presumption exists

9   when the records in question are subject to a stipulated protective order.  (ECF No. 142 at 6,

10  explaining that defendants "are wrong" based on Roman Catholic, 661 F.3d at 424.)  **The court**

11  **expects not to see further mention of this supposed rebuttable presumption in future**

12  **briefing from defendants in this case** unless they are prepared to demonstrate why the court's

13  current reading of the law is incorrect.  In the context of seeking to file under seal documents

14  covered by the SPO, the burden remains squarely on the party opposing disclosure to show good

15  cause.  See Roman Catholic, 661 F.3d at 424 ("If a party takes steps to release documents subject

16  to a stipulated order, the party opposing disclosure has the burden of establishing that there is

17  good cause to continue the protection of the discovery material.").

18       The risk defendants run in creating, or failing to independently resolve, discovery disputes

19  with opposing counsel is that underlying discovery materials may become public in the course of

20  the court resolving a discovery motion—if defendants fail to show good cause for protection.

21  (The same goes for plaintiffs, of course, but they do not share the same institutional

22  confidentiality concerns as the City.)  To the extent the parties feel the briefing schedule for a

23  request to seal on a motion to compel is too truncated, they are welcome to offer a stipulated

24  proposal to extend the briefing deadlines (or an ex parte application, if necessary).[12]

25  ──────────────

26  [12]    To aid the parties' understanding for any future discovery disputes brought to the court—
    which hopefully will be few and far between—the court also briefly addresses defendants' new
    argument raised in their reply that documents for which sealing is not granted should be returned

27  to the parties for re-crafting a joint statement that avoids discussing confidential-designated
    material, as opposed to being filed publicly without the requested redactions.  Notwithstanding

28                                                                          *(continued)*

23

With all of that being said, the court finds that in this motion defendants have shown good cause for all of the requested redactions and filings under seal.  The majority of the materials sought to be protected relate in one way or another to internal personnel investigations within the VPD, and the rest offer no obvious public value to counterbalance the privacy interests involved.

While plaintiffs argue that much of the badge-bending-related information sought to be protected is already in the public domain by virtue of the public testimony in the <u>Milano</u> criminal case, they simply attach hundreds of pages of transcripts to their opposition to the request to seal without any specific citations.  The court will not wade through such voluminous records to make plaintiffs' argument for them.

Accordingly, defendants' request to seal is granted.

**<u>CONCLUSION</u>**

For the above reasons, IT IS HEREBY ORDERED that:

1.  Plaintiffs' motion to compel (ECF No. 174) is GRANTED IN PART and DENIED IN PART, and the September 28, 2022, hearing on that motion is VACATED;

    a.  By no later than October 5, 2022, the parties SHALL meet and confer to decide upon a mutually agreeable date, time, and location for conducting the reconvened depositions of Kent Tribble and Lee Horton.  Each deposition is limited to no more than 20 minutes to cover the subjects identified in this order;

    b.  Plaintiffs' request for sanctions is granted only to the extent that defense counsel shall bear all reasonable expenses associated with facilitating these reconvened depositions;

////

////

////

the text of Local Rule 141(e)(1), which refers to returning <u>paper</u> documents delivered to the court, the court will be loath to give either party more than one bite at the apple to show good cause for filing materials under seal.  As has been this court's practice in other cases involving the City of Vallejo, failure to provide good cause for proposed redactions or sealing will generally result in those materials being filed publicly on the docket without the requested protection.

2.  Defendants' request to seal (ECF No. 181) is GRANTED;

    a.  **Defendants shall** forthwith:

        i.  File on the docket the Declaration of Matthew Slentz with all exhibits (except those designated as Exhibits 11-14), reflecting the proposed redactions submitted to the court with the request to seal; and

        ii.  Send to the Clerk of Court (at ApprovedSealed@caed.uscourts.gov) for filing UNDER SEAL separate PDFs of:

            1.  Defendants' Request to Seal;

            2.  The Declaration of Matthew Slentz with all exhibits (except those designated as Exhibits 11-14) in unredacted form; and

            3.  An unredacted complete copy of the Declaration of Katelyn Knight (the redacted version of which was already filed at ECF No. 181.2); and

    b.  **The Clerk of Court is directed** to immediately file UNDER SEAL the following documents already in the court's possession in file-ready format:

            1.  An unredacted copy of the Joint Statement;

            2.  Defendants' proposed order granting the Request to Seal;

            3.  Plaintiffs' opposition to the Request to Seal;

            4.  Defendants' reply in support of the Request to Seal; and

            5.  Plaintiffs' objection to defendants' reply in support of the Request to Seal.

Dated:  September 26, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.mcco.1191

25